TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

———————————————————————

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-1009 |
| of | : | |
| | : | May 22, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

———————————————————————————————————————————

THE HONORABLE RICHARD K. RAINEY, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

Must merchandise be advertised as "secondhand or used" if it is used, worn, or sampled for a short time by a consumer and then returned in like-new condition pursuant to the retailer's policy allowing returns of merchandise at the customer's discretion?

CONCLUSION

Merchandise must be advertised as "secondhand or used" if it is used, worn, or sampled for a short time by a consumer and then returned in like-new condition pursuant to the retailer's policy allowing returns of merchandize at the customer's discretion, unless such use is for inspection purposes only.

ANALYSIS

The question presented for resolution concerns the meaning of the terms "used" and "secondhand" as found in Business and Professions Code section 17531 **Footnote No. 1** with respect to merchandise returns made pursuant to a retailer's policy of allowing such returns within a short period of time after the sale. Section 17531, one of a series of statutes enacted to protect consumers from false advertising (§§ 17500-17581), provides:

"It is unlawful for any person, firm, or corporation, in any newspaper, magazine, circular, form letter or any open publication, published, distributed or circulated in the State of California

or on any billboard, card, label or other advertising medium, or by means of any other advertising device, to advertise, call attention to or give publicity to the sale of any merchandise, which merchandise is secondhand or used merchandise, or which merchandise is defective in any manner, or which merchandise consists of articles or units or parts known as 'seconds,' or blemished merchandise, or which merchandise has been rejected by the manufacturer thereof as not first class, unless there be conspicuously displayed directly in connection with the name and description of such merchandise and each specified article, unit or part thereof, a direct and unequivocal statement, phrase, or word which will clearly indicate that such merchandise or each article, unit or part thereof so advertised is secondhand, used, defective, or consists of 'seconds' or is blemished merchandise, or has been rejected by the manufacturer thereof, as the fact shall be. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both."

Accordingly, a retailer may not advertise or call attention to any item of merchandise that is "used" or "secondhand" unless the item is clearly described as such.

The situation to be analyzed is one in which merchandise has been used, worn, or sampled for a short time by a customer and then returned in like-new condition pursuant to the retailer's policy allowing returns of merchandise at the customer's discretion. For purposes of our discussion, we may assume that the merchandise has not become "defective in any manner, or . . . consists of . . . parts known as seconds, or blemished . . . or which . . . has been rejected by the manufacturer as not first class . . . ." (§ 17531.) Must such merchandise be advertised as "secondhand or used" even though (1) its value has not been diminished, (2) its function and utility have not been affected in a meaningful way, and (3) no damage has been caused thereto, whether seen or unseen? We conclude that it must be advertised as "secondhand or used" unless such use was for inspection purposes only.

Preliminarily, we note that it is a common practice of retailers to allow a "no questions asked" policy when merchandise is returned within a short time of purchase. In this regard, Civil Code section 1723 provides:

"(a) Every retail seller which sells goods to the public in this state that has a policy as to any of those goods of not giving full cash or credit refunds, or of not allowing equal exchanges, or any combination thereof, for at least seven days following purchase of the goods if they are returned and proof of their purchase is presented, shall conspicuously display that policy either on signs posted at each cash register and sales counter, at each public entrance, on tags attached to each item sold under that policy, or on the retail seller's order forms, if any. This display shall state the store's policy, including, but not limited to, whether cash refund, store credit, or exchanges will be given for the full amount of the purchase price; the applicable time period; the types of merchandise which are covered by the policy; and any other conditions which govern the refund, credit, or exchange of merchandise.

"(b) This section does not apply to food, plants, flowers, perishable goods, goods marked 'as is,' 'no returns accepted,' 'all sales final,' or with similar language, goods used or damaged after

purchase, customized goods received as ordered, goods not returned with their original package, and goods which cannot be resold due to health considerations.

" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

In examining the language of section 17531, we apply well established principles of statutory interpretation in determining its meaning. "The overriding objective of statutory construction is to ascertain and effectuate legislative intent." (*Larson v. State Personnel Bd.* (1994) 28 Cal.App.4th 265, 276.) "In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.) We give the words "their usual and ordinary meaning." (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.) "Statutes are to be given a reasonable and common sense interpretation consistent with the apparent legislative purpose and intent 'and which, when applied, will result in wise policy rather than mischief or absurdity.' [Citation.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1392.) ". . . 'A statute must be construed "in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts." [Citation.]'" (*People v. Hull* (1991) 1 Cal.4th 266, 272.) "Moreover, . . . it is a settled principle of statutory construction that a Legislature in legislating with regard to an industry or activity, must be regarded as having had in mind the actual conditions to which the act will apply; that is, the custom and usages of such industry or activity." (*Irvine Company v. California Emp. Com.* (1946) 27 Cal.2d 570, 581.)

Applying these principles, we find that "secondhand" commonly means "used or worn by a previous owner." (Webster's Third New Internat. Dict. (1971) p. 2051.) "Used," in this context, means "that has endured considerable use," "that has been utilized according to its nature or purpose," and "partly worn-out." (*Id.*, at p. 2524.)

The closest case we have found to the present situation is *Weigel* v. *Ron Tonkin Chevrolet Co.* (1984) 298 Or. 127 [690 P.2d 488]. In *Weigel*, the Oregon Supreme Court concluded that where there has been a transfer of legal possession of an automobile along with the "person's discretionary use for his or her own purposes," the automobile must thereafter be represented as "used or second-hand." (*Id.*, at p. 490.) **Footnote No. 2** The court noted the common practice of "using" merchandise for inspection purposes only:

"Doubtless the legislature did not intend an automobile to become 'used' goods as soon as it is driven. Legislatures must be assumed to know that many new automobiles are driven some distance to the showroom or sales lot of the retail dealer, and that sales personnel and potential customers drive new automobiles in the course of considering a purchase. An automobile does not become a 'used' car because several potential buyers have driven it solely for that purpose any more that a coat becomes used clothing because several customers have tried it on in the clothing store. . . .

"It is equally improbable that the legislature intended an automobile to become 'used' goods by a mere paper transaction, later revoked, without being driven at all. This might happen whenever a customer orders a particular model and completes all steps in the sale (or lease),

including payment, but the parties rescind the sale, perhaps in order to substitute a different model, by the time the ordered vehicle is delivered or even reaches the dealer. The prior sales contract alone cannot satisfy the statutory concept of 'used' goods . . . .

"We therefore do not accept the emphasis that defendant would place on the question whether a sale had been completed in this case. Nor does the result depend on the kind of warranty given with the vehicle or how the prior transaction was treated for purposes of the dealer's inventory and financing practices. Merchandise other than automobiles sometimes is sold, examined or tried out at home, and returned to the seller. Whether such merchandise is 'new' or 'used' does not depend on the fact of an earlier sale; it depends on whether the article was used. In the case of automobiles, moreover, the test cannot be confined to prior sales; doubtless the statute encompasses prior use under a lease, a loan, or by the dealer himself as a personal or business vehicle beyond the narrow uses involved in moving the merchandise to the dealer's place of business, testing or servicing it, and demonstrating it in the sales process. If an automobile has been physically used by anyone for purposes beyond the uses incidental to the sales process, that fact must be disclosed. . . .

"The prior transaction involving the automobile sold to plaintiff, including its undisclosed use by Hubbard, appears to make the automobile 'used' rather than 'new' as a matter of law. It does not matter exactly how far the earlier transaction had progressed as a legal transfer of ownership, if in fact defendant transferred possession of the automobile to Hubbard for her discretionary personal use rather than for a limited tryout and she so used it for five days before returning it . . . ." (*Id*., at p. 491, fn. omitted.)

We believe *Weigel* correctly interprets and applies the terms "secondhand or used" for our purposes herein. Unless the use is for inspection purposes only, merchandise must be advertised as "secondhand or used" after it has been used, worn, or sampled for a short time before returning it in like-new condition. When the product is used for its intended purpose after being inspected and tested as part of the sales process, it must be considered "secondhand or used" under the terms of section 17531. Such application of section 17531 is consistent with the terms of Civil Code section 1723, subdivision (b), which excludes from full refund requirements "goods used or damaged after purchase."

We again emphasize, however, that any authorized testing of the product must not diminish its value or affect its utility or desirability in any manner. Moreover, the selling of the item as new must not otherwise be misleading under section 17500, which prohibits making untrue or misleading representations in the sale of goods or services. Merchandise that is a "floor sample," "demonstrator," or "out-of-box" item may, for example, require disclosure of such fact in order to avoid a violation of section 17500.

We conclude that merchandise must be advertised as "secondhand or used" if it is used, worn, or sampled for a short time by a consumer and then returned in like-new condition pursuant to the retailer's policy allowing returns of merchandise at the customer's discretion, unless such use is for inspection purposes only.

\* \* \* \* \*

**Footnote No. 1**
Unidentified section references herein are to the Business and Professions Code.
**Footnote No. 2**
The Oregon statute considered in *Weigel* was much broader in coverage than the provisions of section 17531. In California, automobiles are specifically treated in a separate statutory scheme. (Veh. Code, § 665.) Home furnishings and bedding are other examples of merchandise treated separately under California law. (§§ 19070-19165.)