Argued and submitted June 22, reversed and remanded for further proceedings
November 8, 2000

Daniel FEITLER,
*Appellant,*

*v.*

THE ANIMATION CELECTION, INC.,
*Respondent.*

(97-CV-0342-AB; CA A107262)

13 P3d 1044

Greg O'Neill argued the cause and filed the briefs for appellant.

Greg Hendrix argued the cause for respondent. With him on the brief was Hendrix & Brinich, LLP.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

**HASELTON, J.**

Plaintiff Daniel Feitler appeals from a judgment for defendant, The Animation Celection, Inc., in an action under the Oregon Unlawful Trade Practices Act (UTPA), ORS 646.605 *et seq.* Plaintiff advances two distinct grounds for recovery under the UTPA based on defendant's alleged misrepresentations concerning: (1) defendant's cost for the goods sold to plaintiff; and (2) the exclusivity of those goods. After a trial to the court, the court rejected both grounds, concluding that plaintiff had failed to prove any actionable misrepresentation and, in all events, had failed to prove any "ascertainable loss" from the alleged misrepresentations. ORS 646.638(1). We conclude that the trial court correctly rejected plaintiff's "cost for goods" ground. However, the court erred in concluding that, as a matter of law, defendant's misrepresentations of the "exclusivity" of the goods were not misrepresentations of a "characteristic" of the goods, ORS 646.608(1)(e), and that those misrepresentations could not result in "ascertainable loss." Our disposition on the "exclusivity of goods"-based ground necessitates further findings of fact by the trial court. Accordingly, we reverse and remand for further proceedings.

Except as noted, the following facts are undisputed for purposes of this appeal: Plaintiff is a private collector of animation art, *i.e.*, drawings used in creating film cartoons. Defendant is a vendor of animation art, with a gallery in La Jolla, California. In April 1997, Larry Hagstrom, a salesman at defendant's gallery, contacted plaintiff and asked if he was interested in purchasing drawings from the 1928 Mickey Mouse cartoon, *Plane Crazy*.[1] Plaintiff expressed interest, and, in response, Earl Kisluk, one of defendant's owners, contacted one of his suppliers and obtained 51 drawings from the so-called "telephone pole" scene in *Plane Crazy*.[2] On April 17, 1997, Hagstrom sent plaintiff a letter in

---

[1] *Plane Crazy,* the first Mickey Mouse cartoon, premiered as a silent animated film in April 1928. Because of a lack of public interest, the film was not generally released. However, following the success of *Steamboat Willie*, the first all-talking animated movie, Walt Disney added a soundtrack to *Plane Crazy* and re-released the original film. *See* Kathy Merlock Jackson, *Walt Disney: A Bio-Bibliography*, 13-17 (1993).

[2] The parties understood that Disney used approximately 10,000 drawings to create the entire *Plane Crazy* cartoon and that the telephone pole scene itself

which he included photocopies of 47 of the drawings obtained by Kisluk, without disclosing that Kisluk had, in fact, acquired four additional drawings.[3] The letter indicated: "Hear [*sic*] is the very last of all plane crazy!" Plaintiff and defendant both understood that to mean that defendant was selling plaintiff all of the *Plane Crazy* drawings it had obtained from its supplier. However, defendant knew that that representation was false: Kisluk and his partner had determined to hold back the other four drawings because, in Kisluk's words, the drawings

> "were an important piece of history and I wanted one or two for myself, those were the only ones I had ever seen on the market, and probably will ever be on the market."

Subsequently, plaintiff and Hagstrom negotiated a price for the drawings. At some point during the parties' interactions, Hagstrom indicated that defendant's cost for the drawings was $30,000. Plaintiff ultimately agreed to pay $30,000 for the 47 drawings. On April 24, 1997, Hagstrom mailed the 47 drawings to plaintiff. In the cover letter accompanying the drawings, Hagstrom reiterated the previous representation of exclusivity:

> "Hear [*sic*] is the very last of all plane crazy! Congratulations, you have cleaned me out of all of my plane crazy drawings!!!"

There is no evidence that the 47 drawings are worth less than the $30,000 that plaintiff paid.[4]

In July 1997, plaintiff filed his original complaint, pleading claims of fraud, misrepresentation, and violation of the UTPA. The gravamen of each of those claims was that defendant had misrepresented that it had paid its suppliers $30,000 for the drawings; that defendant had paid less; and that, consequently, defendant had falsely represented to plaintiff that it was selling the drawings "at cost."

---

required roughly 150 to 200 drawings. Neither party knows how many of those original drawings remain in existence today.

[3] Apparently, Kisluk subsequently threw out one of the 51 drawings because it was blank.

[4] During the colloquy at trial, the trial judge asked the attorneys: "[W]as there any evidence that the drawings weren't worth the thirty thousand dollars paid for them?" Plaintiff's attorney, in response, acknowledged that there was not.

In August 1997, plaintiff learned of the drawings withheld by defendant when he received a copy of the receipt from defendant's supplier showing 51 drawings. At about the same time, defendant issued an auction catalog in which it listed one of the withheld *Plane Crazy* drawings at a price of $1,600.

Ultimately, plaintiff filed a Third Amended Complaint, which is the operative complaint for purposes of this appeal. That complaint alleged a single claim for violation of the UTPA, based on two grounds. First, plaintiff reiterated his allegations that defendant had misrepresented the terms on which it had acquired the drawings from its supplier:

> "Defendant had not, by the time it offered and sold the drawings to Plaintiff, made an agreement with its source to pay the source $30,000.00 in 30 days. No agreement had been made with the source. Defendant did not turn over to its source the $30,000.00 collected from Plaintiff in 30 days, but instead Defendant gave its source $6,000.00 and some other animation art work which it had originally obtained from that source in the first place."

Plaintiff asserted that those representations constituted a "false or misleading representation of fact concerning the * * * [seller's] cost for * * * goods" in violation of ORS 646.608(1)(s).[5]

Second, plaintiff alleged that defendant had misrepresented the exclusivity of the drawings it sold to plaintiff:

> "Defendant had obtained 51 *Plane Crazy* drawings from its source, not just the 47 that it sold to Plaintiff. Defendant held out or 'skimmed' the other four drawings. Thus, Defendant's representations to Plaintiff that Plaintiff was being offered and sold the 'very last of all *Plane Crazy*' and that Plaintiff was cleaning Defendant out of all its *Plane Crazy* drawings were false."

---

[5] Before the trial court, as now on appeal, plaintiff referred in passing to ORS 646.608(1)(j), which proscribes "misrepresentations of fact concerning the reasons for, existence of, or amounts of price reductions." From our review of the record, we do not understand plaintiff to have made an argument under subsection (1)(j) that is substantively distinct from its overarching argument under subsection (1)(s). Nor, apparently, did the trial court, whose disposition of plaintiff's "cost"-related allegations referred only to subsection (1)(s). Accordingly, in our analysis, we refer solely to subsection (1)(s).

Plaintiff asserted that those statements were representations that "goods * * * have * * * characteristics, * * * quantities or qualities that they do not have," in violation of ORS 646.608(1)(e).

Plaintiff further contended that he had incurred "ascertainable loss" as a result of either or both of those alleged violations. ORS 646.638(1). He sought various and alternative forms of relief, including damages of $2,352.72, representing the asserted value of the withheld drawings, restitution of the $30,000 purchase price, or nominal damages.

The case was tried to the court. As described more fully below, the court rejected both of plaintiff's grounds, concluding that: (1) on the "cost for goods" ground, plaintiff had failed to prove an actionable misrepresentation under ORS 646.608(1)(s); and (2) on the "exclusivity of goods" grounds, plaintiff had failed to prove either an actionable misrepresentation or, in all events, "ascertainable loss." Plaintiff appeals, challenging those determinations.

ORS 646.608(1) provides, in part:

"A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person does any of the following:

"* * * * *

"(e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that they do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have.

"* * * * *

"(s) Makes false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services."

ORS 646.638(1) provides:

> "[A]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of willful use or employment by another person of a method, act or practice declared unlawful by ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or $200, whichever is greater. The court or the jury, as the case may be, may award punitive damages and the court may provide such equitable relief as it deems necessary or proper."

To prevail under ORS 646.638(1) a plaintiff must prove: (1) a violation of ORS 646.608(1); (2) causation ("as a result of"); and (3) damage ("ascertainable loss"). Where, as here, the alleged violations are affirmative misrepresentations, the causal/"as a result of" element requires proof of reliance-in-fact by the consumer. *See Sanders v. Francis*, 277 Or 593, 598, 561 P2d 1003 (1977) (although reliance is not always required to satisfy the "result of" language in ORS 646.638(1), "when plaintiff claims to have acted on a seller's express representations" factual reliance is indeed essential). Finally, as amplified below, "ascertainable loss" for purposes of ORS 646.638(1) can encompass loss that would not be cognizable injury under the common law. *See Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or 127, 135-36, 690 P2d 488 (1984) (indicating that the ascertainable loss requirement should be "viewed broadly" and that losses too small to be cognizable under the common law nevertheless suffice for purposes of the UTPA).

Within that framework, we turn to the trial court's rejection of plaintiff's two grounds for recovery under the UTPA. For clarity, we first address plaintiff's "cost for goods" ground and then the "exclusivity of goods" ground.

### A. "Cost for Goods"

In its letter opinion, the trial court explained its rejection of plaintiff's allegations that defendant had misrepresented its cost for the drawings:

> "Defendant, through its sales agent, told plaintiff that its cost was $30,000. The court finds that $30,000 was a good faith estimate by defendant of its cost for the drawings and therefore this was not a wilful misrepresentation.

"[Defendant] ultimately paid approximately $30,000 to its supplier in a combination of money and drawings. Plaintiff complains that he understood defendant would pay in *cash*, not kind. It is doubtful that this constitutes a misrepresentation prohibited by ORS 646.608. If so, a reasonable person would not rely upon it in determining whether to purchase goods. It is of no consequence how or when a seller pays his supplier. Therefore, if plaintiff suffered any damages, they were not *the result* of this statement by defendant."

On appeal, plaintiff asserts that the trial court erred in concluding that the representation was merely a "good faith estimate"; that representations as to "how or when a seller pays his supplier" are immaterial under ORS 646.608(1)(s); and that plaintiff has not suffered any "ascertainable loss." We reject those contentions.

■       The trial court found that defendant did, in fact, "ultimately [pay] approximately $30,000 to its supplier in a combination of money and drawings." That finding is amply supported by the record—and to the extent that plaintiff's alternative prayer for restitutionary damages, *see* 170 Or App at 707, might arguably require us to engage in a *de novo* determination of that fact, we agree with the trial court. Given that defendant did, in fact, pay its supplier $30,000, the trial court's reference to "good faith estimate" was, at most, surplusage.[6]

■       The issue thus reduces to whether a seller's alleged misrepresentations of the nature of consideration paid for goods or the timing of such payment constitute an actionable misrepresentation of the "cost for goods" under subsection (1)(s). "Cost" means:

"[T]he amount or equivalent paid or given or charged or engaged to be paid or given for anything bought or taken in barter or for services rendered[.]

"* * * * *

---

[6] The gist of plaintiff's fourth assignment of error, challenging that aspect of the court's analysis, was that, under the UTPA, defendant's good faith is immaterial. Because there was no misrepresentation, we need not resolve that matter.

"[A]n item of outlay incurred in the operation of a business enterprise (as for the purchase of raw materials, labor, services, supplies) including depreciation and amortization of capital assets[.]"

*Webster's Third New Int'l Dictionary*, 515 (unabridged ed 1993). Nothing in the statutory context clouds or contradicts that plain "amount or equivalent paid" meaning. Given that unambiguous "text-in-context" statutory meaning, *see PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993), and given that defendant paid consideration worth $30,000 for the drawings, defendant's "cost" was, in fact, $30,000. In those circumstances, "how or when" defendant-seller paid his supplier was legally immaterial, and there was no actionable misrepresentation under ORS 646.608(1)(s).

## B. "Exclusivity" of Goods

The trial court rejected plaintiff's "exclusivity" of goods ground for recovery on two alternative grounds. First, there was no actionable misrepresentation of a "characteristic" of the goods:

"In order to be a representation as to a 'characteristic', the representation that these are all of the *Plane Crazy* drawings that defendant's dealer was offering must say something about the nature of the 47 [drawings] purchased. There was no representation and plaintiff knew that he was not buying all existing drawings from the cartoon or even the telephone pole scene. He only understood he was buying what was being offered to the defendant by this source at this time. In the context of the large number of unaccounted for original drawings, this hardly seems like a representation as to a material characteristic that these 47 [drawings] possess."

Second, plaintiff had incurred no "ascertainable loss" from the misrepresentation of exclusivity:

"Plaintiff testified that he has not suffered a financial loss by defendant holding 3 drawings from the telephone pole scene. Ultimately, plaintiff also testified that he has been harmed because the value of his collection is diminished by not having all of the drawings and that if he decides to sell the drawings he will not be able to say he has

the only known drawings from the *Plane Crazy* telephone pole scene. As to the first contention, defendant did not represent these were *all* of the *Plane Crazy* drawings in existence and plaintiff knew that. As to the second contention, he would not have been able to represent that he had all existing *Plane Crazy* telephone pole drawings, even if he had purchased 51, instead of 47, from defendants.

"Because plaintiff received the very same goods he contracted to purchase * * * and because there are so many unaccounted for [drawings] which plaintiff does not own that it is impossible to determine that the value of these 47 cells would be greater by the addition of 3 more [drawings] to his collection, the court concludes that plaintiff has not met his burden of proving by a preponderance of evidence that he has suffered an ascertainable loss."

Significantly, for purposes of our ultimate disposition, the trial court did not make any findings of fact as to whether plaintiff did, in fact, rely on plaintiff's misrepresentations of exclusivity in purchasing the 47 drawings. Rather, after addressing the "characteristics" issue, the court expressly assumed *arguendo* that plaintiff had relied and then proceeded to address "ascertainable loss."[7]

■ We conclude that the trial court erred in both of its reasons for rejecting the "exclusivity of goods" ground for recovery. The court erred first in its conclusion that plaintiff's statements, "the very last of all *Plane Crazy*" and "you have cleaned me out of all my *Plane Crazy* drawings," were not misrepresentations of the "characteristics" of the drawings. In the context of collectible items, the existence or nonexistence of other items within the same finite set is a fact of significance to any reasonable collector.

Here, as the trial court found, there were originally 150 to 200 drawings of the "telephone pole" scene, and plaintiff did not know how many of those original drawings still existed. Those are significant findings—but they are incomplete in that, at least in this record, there is no evidence of

---

[7] The trial court stated:

"Assuming that [plaintiff] * * * would not have purchased the 47 drawings had he known defendant was keeping several, the court will consider whether plaintiff has been damaged."

any *known* "telephone pole" scene drawings other than those defendant acquired from its supplier.[8] As Kisluk acknowledged: "[T]hose were the only ones I had ever seen on the market, and probably will ever be on the market." Thus, if defendant had, in fact, conveyed "all" of its *Plane Crazy* drawings, plaintiff would have acquired a complete set of all known "telephone pole" scene drawings. In these circumstances, exclusivity was a "characteristic" of the drawings for purposes of ORS 646.608(1)(e).[9]

■       With respect to "ascertainable loss," plaintiff argues:

"If the aim of the collector is to collect as many drawings as exist from the same film, it should indeed be obvious that 47 drawings are worth less than the same 47 drawings plus four.

"* * * * *

"The value of collections is derived not only from the inherent value of each piece in the collection, but also from the fact that each piece is linked to each other piece in the collection by some characteristic. Each piece which is outside the collection has value not just for its inherent value as art, but sometimes more importantly because of the need to add that piece to the collection or to bring the collection nearer to completion."

We agree.

■       "Ascertainable loss" under the UTPA is amorphous. Any loss will satisfy that requirement so long as it is "capable of being discovered, observed, or established." *Scott v. Western Int. Sales, Inc.*, 267 Or 512, 515, 517 P2d 661 (1973). Whatever the extreme contours of that concept, the loss here

---

[8] To illustrate, in 1909, roughly 60 Honus Wagner baseball/tobacco cards were created. Today, all of them *might* still exist, but no more than 50 are actually known to exist, and only a handful of those are in good condition. Earlier this year, a collector paid $1.265 million for the only known card in top condition. *See Baseball Card Sells for $1.1 Million*, Oregonian, July 16, 2000, at E2. If a dealer acquired all 50 known cards and then somehow secretly acquired two more unknown Wagners, and then sold the original 50 saying, "you've cleaned me out of all my Honus Wagners," that misrepresentation of exclusivity would be an actionable misrepresentation of a "characteristic" of the baseball cards.

[9] Given that conclusion, we need not address plaintiff's further argument that defendant's exclusivity statements were misrepresentations of "quality" for purposes of ORS 646.608(1)(e).

fell well within its limits. At the very least, to obtain the promised feature of exclusivity, plaintiff would have to purchase the drawings that defendant withheld. As noted, defendant listed one of those drawings for a price of $1,600. Thus, if plaintiff did, in fact, rely on defendant's misrepresentations of exclusivity, plaintiff incurred "ascertainable loss" within the meaning of ORS 646.638(1).

A remand is required. As noted, the trial court, as finder of fact, rendered no finding as to the "as a result of" causation element. Consequently, we remand for the trial court to determine whether plaintiff relied in fact on the misrepresentation of exclusivity. If the court finds reliance in fact, it must determine the extent of plaintiff's "ascertainable loss" as a result of that reliance.

Reversed and remanded for trial court to determine whether plaintiff relied in fact on defendant's representation of exclusivity and, if so, to determine plaintiff's "ascertainable loss" from such reliance and to enter judgment accordingly.