DeVORE, P.J.
*81 Defendant's appeal contrasts a jury's verdict that found no damages with a trial court's decision that granted rescission in plaintiff's claim for violation of the Unlawful Trade Practices Act (UTPA), ORS 646.605 - 646.656. Plaintiff Simonsen brought a claim against defendant Sandy River Auto, LLC, arising out of defendant's sale of a vehicle to plaintiff. Plaintiff sought rescission or, in the alternative, damages. The jury found that defendant willfully failed to disclose material defects in the vehicle but awarded plaintiff no damages. The trial court found that plaintiff suffered "ascertainable loss" within the meaning of ORS 646.638 and granted rescission, directing that plaintiff return the vehicle and that defendant repay plaintiff a *983 $3,000 portion of his original payment. The trial court awarded to plaintiff $59,861 for attorney fees in a supplemental judgment.
On appeal, defendant first assigns error to the trial court's determination that plaintiff had prevailed in the absence of damages and to entry of a judgment rescinding the sale of the vehicle. Defendant also assigns error to the award of attorney fees, arguing that plaintiff did not prevail and, alternatively, that rescission, if granted, was not a claim under the UTPA and thus not a claim providing a statutory basis for recovery of attorney fees.
For the reasons that follow, we conclude that, on this record, plaintiff must be understood to have established "ascertainable loss" in the loss of the value of the advantageous bargain that was represented in the sale of the vehicle. It follows that plaintiff prevailed and rescission is justified. Accordingly, we affirm the general and supplemental judgments.
PROCEEDINGS
After a jury's verdict and a trial court's findings for plaintiff, we view the evidence and the reasonable inferences to be drawn from that evidence in the light most favorable to plaintiff. Northwest Natural Gas Co. v. Chase Gardens, Inc. , 328 Or. 487, 489, 982 P.2d 1117 (1999). We take the elemental *82 facts, like the parties do, from plaintiff's complaint, the verdict, and the court's findings in its opinion.[1]
In response to an advertisement, plaintiff visited defendant's used car lot to ask about a Volkswagen Passat. Plaintiff alleged that Smith, defendant's owner, told plaintiff that the valve cover gaskets had been replaced, the car was in good running order, that it would not need any major fixes soon, that it was a good car, that it was offered at a great price, and that plaintiff was getting "a really good deal." Plaintiff bought the car for $4,200.
Plaintiff alleged that two days later a mechanic reported, among other things, that the timing belt needed replacement, that the valve cover gaskets leaked, that the exhaust system was rusted severely, that the muffler was starting to "flake apart," and that the undercarriage was extremely damaged and rusty. Plaintiff learned from CarFax that the car had been damaged in a rear-end collision.[2]
Plaintiff filed a single claim for violation of the UTPA, in which he alleged that defendant knew, or should have known, the car's material defects but that defendant willfully failed to disclose them. He alleged defendant willfully made false or misleading representations concerning reasons the car was listed for sale below market value. For relief, plaintiff asked for rescission or, in the alternative, for an award of the minimum statutory damages of $200 or actual damages of $4,562.77.
The parties tried the damage claim to the jury and reserved rescission for decision by the trial court. The court instructed the jury, in relevant part, as follows:
" UNLAWFUL TRADE PRACTICE
"* * * * *
"To recover, [plaintiff] must prove the following elements by a preponderance of the evidence:
*83 "* * * * *
"3) At the time of the sale, [defendant] willfully engaged in an unlawful practice by failing to disclose the following material defects [in] the vehicle which it knew or should have known about.
"a. Rust and corrosion
"b. Leaking oil
"c. Prior rear end collision
"4) [Plaintiff] suffered an ascertainable loss of money or property as a result of the unlawful practice.
"* * * * *
" MATERIAL DEFECT
*984 "A material defect is a defect or condition which substantially impairs the use, value or safety of a vehicle.
"* * * * *
" DAMAGES-ECONOMIC
"Economic damages are the objectively verifiable monetary losses that the plaintiff has incurred. In determining the amount of economic damages, if any, consider:
"1) The reduction in the fair market value of the vehicle; and
"2) [T]he out of pocket expenses incurred by plaintiff.
"The total amount of economic damages may not exceed the sum of $4,562.77."
" MEASURES OF DAMAGES
"If you find the plaintiff is entitled to damages, you must determine the amount, if any, of the compensation owed to plaintiff due to fault or negligence of the defendant.
"The measure of damages is the difference between the price paid for the vehicle and the fair market value of the vehicle at the time of sale.
"You may consider the cost of reasonable repairs to be evidence of damages; however, if the cost of reasonable repairs is less than the difference in value, the plaintiff still may recover the difference in value."
*84 The jury was not instructed on the meaning of "ascertainable loss," nor was the jury specifically asked about "ascertainable loss," except as may have been subsumed within the instructions on economic damages or measure of damages. The jury returned a verdict that found material defects and willful nondisclosure but no damages. In relevant part, the verdict form reads:
"1. When delivered to the plaintiff did the vehicle have one or more of the alleged material defects?
" ANSWER : Yes X No _
"* * * * *
"2. If you find that the vehicle did have one or more of the alleged material defects when it was delivered to the plaintiff, did the defendant know, or should it have known, of those material defects?
" ANSWER : Yes X No _
"* * * * *
"3. Did the defendant willfully fail to disclose the material defects to the plaintiff at the time of delivery?
" ANSWER : Yes X No
"* * * * *
"4. What are plaintiff's damages?
"$ 0 "
Based on a verdict without damages, defendant argued that it had prevailed. Plaintiff disagreed and reiterated his primary request for rescission. After a hearing, the trial court undertook to decide who had prevailed and whether plaintiff should be granted rescission. The court explained in an opinion: "The UTPA does not require a [plaintiff] to prove damages to prevail. It merely requires a plaintiff have suffered an 'ascertainable loss.' " The court reviewed reported cases available at that time, noting, in part, that "[n]ot getting what was promised is enough * * *." The court observed that the jury had found that the seller had failed to disclose the condition of the car and that finding sufficed for minimal statutory damages of $200. Turning to the next issue, the court announced that the "claim for *85 rescission * * * was heard by the court" and that "[t]he court finds that since the car was not as promised, rescission is an available remedy." Considering damage to the car that had happened after the sale, the court reduced the restitution that defendant should pay to $3,000 and directed plaintiff to return the car. A judgment followed.
Plaintiff petitioned for an award of attorney fees as a prevailing party under the UTPA. Among other arguments, defendant objected that plaintiff had not prevailed in the absence of a finding of damages and he was therefore not entitled to an award of attorney fees. The court rejected that argument and awarded plaintiff attorney fees of $59,861.
LAW
The parties' dispute turns on the meaning of the term "ascertainable loss" that is found in the statute authorizing the private right of *985 action for a violation of the UTPA. In relevant part, ORS 646.638(1) provides that:
"a person that suffers an ascertainable loss of money or property , real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater. The court or the jury may award punitive damages and the court may provide any equitable relief the court considers necessary or proper."
(Emphasis added.) In defendant's view, "ascertainable loss" is strictly synonymous with proven economic damages, which the jury found to be zero. Defendant contends that the trial court's decision on rescission is bound by the jury's finding on damages. In plaintiff's view, "ascertainable loss" is broader than economic damages for diminished market value, which is all that the jury found. Plaintiff contends that case law has defined "ascertainable loss" to encompass the loss recognized by the trial court-that is, getting something less than that for which plaintiff bargained. Put in other words, this case asks whether "ascertainable loss" is determined only by a difference in market value or may be found in plaintiff's loss of the advantageous bargain promised.
*86 At the time of the trial court's opinion, several cases had illustrated the subtlety of the term "ascertainable loss." In Scott v. Western Intern. Surplus Sales, Inc. , 267 Or. 512, 517 P.2d 661 (1973), the plaintiff bought a tent for $38.86, expecting eaves and a window with a closing flap, as promised in the packaging. Instead, the tent had only a vent and no eaves. The plaintiff brought a claim under the UTPA. The defendant argued that the plaintiff had failed to prove an ascertainable loss or state a claim. The trial court awarded the minimum statutory damages of $200.
On appeal, the Supreme Court held that, to state a claim, there was no need to allege or prove the amount of ascertainable loss-at least when the plaintiff only sought minimal damages. Even without a showing of the difference in value of a tent with and without the desired features, the court inferred an ascertainable loss. "The inference can be drawn that because the tent did not have a window with a closing flap or eaves it had a value of less than $38.86." Id. at 516, 517 P.2d 661. The court observed that "ascertainable" meant "capable of being discovered, observed or established." It sufficed to infer that, because the tent was not as represented, the amount of its value was reduced. Judgment was affirmed. Id. at 516-17, 517 P.2d 661.
In Weigel v. Ron Tonkin Chevrolet Co. , 298 Or. 127, 690 P.2d 488 (1984), the plaintiff bought a car from the defendant, believing that it was new. The defendant explained that the odometer reading of 260 miles resulted from a dealer trade, when, in truth, a prior customer had driven it 200 miles. The prior customer had possession in a conditional sale that had failed for lack of financing. When the plaintiff brought a UTPA claim, the jury awarded statutory damages of $200 and punitive damages of $10,000. Among other things, the defendant argued that there was no evidence of ascertainable loss. That is, the plaintiff had the car with 260 miles known to show on the odometer at the time of the sale.
On appeal, the Supreme Court observed, "What the legislature meant by an 'ascertainable loss of money or property' is not free from doubt." Id . at 133, 690 P.2d 488. The court allowed that the "difference between the price paid and some objective *87 measure of market value" is not the only measure of loss. Id. Looking to legislative purposes, the court commented that private losses "should be viewed broadly." Id . at 136, 690 P.2d 488. The court quoted with approval a Connecticut decision that had said about that state's own UTPA:
"Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known. * * * When the product fails to measure up, the consumer has been injured; he has suffered a loss. In another sense, he has lost the benefits of the product which he was *986 led to believe he had purchased. That the loss does not consist of a diminution in value is immaterial although obviously such diminution would satisfy the statute."
Id . at 136-37, 690 P.2d 488 (quoting Hinchliffe v. American Motors Corporation , 184 Conn. 607, 440 A.2d 810, 814 (1981) ). To like effect, the Weigel court declared that ascertainable loss did not require an objective loss in market value. Id. at 137, 690 P.2d 488. It sufficed that the plaintiff had testified that the vehicle would have a reduced value because it had previously been owned. The defendant's salesman had conceded the same point. That real, but unquantified loss in value sufficed as "some ascertainable loss of money or property" so as to allow a court or jury to award statutory damages of $200. Id . The judgment was affirmed.
In Feitler v. The Animation Celection, Inc. , 170 Or.App. 702, 13 P.3d 1044 (2000), the loss was again more subtle than quantified. For $30,000, the plaintiff had purchased from the defendant 47 original drawings from the 1928 animated Mickey Mouse cartoon, Plane Crazy , having been told by the defendant that the plaintiff was getting the "very last of all" of the Plane Crazy drawings from the telephone pole scene. In truth, the supplier withheld four more from the scene. The plaintiff alleged a violation of the UTPA on grounds, among others, that the defendant had misrepresented the quality of exclusivity that his collection of drawings from that scene would have. There was no evidence that the 47 drawings were worth less than the $30,000 that the plaintiff had paid. However, one of the four drawings withheld was later listed for sale at a price of $1,600. After *88 trial to the court, the court rejected, among other things, the idea that exclusivity was an actionable quality as to the drawings and further rejected the claim that the plaintiff had suffered any ascertainable loss. The trial court reasoned that the plaintiff had received the very same 47 drawings he thought he was buying and that, because there were potentially many other drawings of the cartoon generally, the plaintiff had not proven a loss.
On appeal, we concluded that the false representation of exclusivity as to the scene was indeed an actionable misrepresentation in a market of collectibles. Next, we observed, " 'Ascertainable loss' under the UTPA is amorphous." Id. at 712, 13 P.3d 1044. Citing Scott , we explained, "Any loss will satisfy that requirement so long as it is 'capable of being discovered, observed, or established.' " Id . at 713, 13 P.3d 1044 (quoting Scott , 267 Or. at 515, 517 P.2d 661 ). Although there was no direct evidence that the 47 drawings were worth less, we noted that, to obtain exclusivity, the plaintiff would, at least, have had to pay $1,600 for one of the drawings withheld. Although the lost quality of exclusivity was not quantified, that lost quality sufficed as "ascertainable loss." Id . at 713, 13 P.3d 1044. We reversed the judgment of dismissal and remanded for further proceedings.
More recently, the Supreme Court addressed the meaning of the term "ascertainable loss" for purposes of a UTPA claim. In Pearson v. Philip Morris, Inc. , 358 Or. 88, 361 P.3d 3 (2015), two purchasers of Marlboro Light cigarettes brought a UTPA claim against the manufacturer, alleging, in part, that they had been misled to believe that the "light" cigarettes had less tar and nicotine, no matter how they were smoked, and that the defendant failed to disclose that the cigarettes had to be smoked in a certain way to deliver less tar and nicotine. Id. at 95-96, 361 P.3d 3. The plaintiffs sought class certification under ORCP 32 C(1), which presented issues, among others, whether a class action was superior to other methods of adjudication and, in turn, whether questions of law or fact common to the members of the class predominate over questions affecting only individual members. Id . at 96-97, 106-07, 361 P.3d 3. The trial court denied certification.
On review, the Supreme Court separately considered the plaintiffs' two distinct theories of loss. For their *89 first theory, the plaintiffs argued that light cigarettes were worth more, such that the plaintiffs had suffered a diminished value when purchasing light cigarettes that were not invariably light. They argued that they did not get full value for their purchase. Id . at 119, 361 P.3d 3. The problem, however, was that Marlboro Lights and regulars sold at the same price. The *987 problem was one of ascertainable loss. Generally, the court observed:
"The requirement that the loss be 'ascertainable' connotes generally that it is one 'capable of being discovered, observed, or established.' Thus the loss must be objectively verifiable, much as economic damages in civil actions must be. But unlike general economic damages in a civil action, the loss required for a UTPA claim must be specifically of 'money or property, real or personal.' "
Id . at 117, 361 P.3d 3. In particular, the court determined:
"In terms of economic loss-which is the kind of loss required here-when there is no price difference for a good with a particular feature and the same good without it, a plaintiff has not paid any extra for the represented quality that the plaintiff did not receive. In other words, the plaintiff is not out of pocket any additional money based on the purchase; the plaintiff got the represented feature for no charge."
Id . at 122, 361 P.3d 3. As a consequence, the court concluded that, absent a price difference, the plaintiffs' theory, involving damages for diminished value, was not a logically viable theory on which class-wide economic losses could be established. Id . at 124, 361 P.3d 3.
The plaintiffs' second theory was that the plaintiffs should be entitled to a refund because they did not get what they believed they were buying. Id . at 124, 361 P.3d 3. The problem, however, was that the theory still presupposed that the plaintiffs suffered a loss in the value of the purchase price, and, as the court determined, the theory required individual proof of reliance on the alleged misrepresentation. For those and other reasons, the Supreme Court concluded that the trial court had not abused its discretion in denying class certification. Although the decision addressed "ascertainable loss" where a plaintiff has chosen to allege loss in terms *90 of diminished market value, the decision did not disturb the principle-evident in prior cases-that "ascertainable loss" can be established in other ways than proof of a particular dollar figure.
In a separate concurring opinion, Justice Walters wrote to call attention to two types of relief that a plaintiff may seek to recover for ascertainable loss under the UTPA. One was damages for diminished value, and another was a refund of the purchase price. Id . at 142, 361 P.3d 3 (Walters, J., concurring). Citing Weigel , Justice Walters recalled that "a party's losses 'should be viewed broadly' " and that "private claims under the act are not limited to those where a plaintiff shows 'an economic loss in the sense of a difference between the price paid and some objective measure of market value.' " Id . (Walters, J., concurring) (citing Weigel , 298 Or. at 133, 690 P.2d 488 ). She noted that a plaintiff can recover for goods that are not as represented " 'irrespective of their market value to others.' " Id . (Walters, J., concurring) (citing Weigel , 298 Or. at 134, 690 P.2d 488 ). Justice Walters stressed:
"A plaintiff who cannot show 'an economic loss in the sense of a difference between the price paid and some objective measure of market value,' [ Weigel ,] 298 Or. at 133 [690 P.2d 488], but who can show that he or she would not have purchased a product but for the seller's misrepresentations about that product, may seek return of the money paid for the product irrespective of its market value, [ Pearson ,] 358 Or. at 126 [361 P.3d 3]."
Id. at 142-43, 361 P.3d 3 (Walters, J., concurring) (emphasis in original). Justice Walters allowed that a plaintiff who would recover, not for diminished value but for lack of promised qualities, must show personal reliance on the false promise. Id . at 144, 361 P.3d 3 (Walters, J., concurring). Thus, in the end, she joined with the majority's conclusion about the impact of individual questions on class certification, but her concurrence highlighted the principle, which survives Pearson , that ascertainable loss can be more than a quantified measurement of diminished market value.
APPLICATION
In this case, ascertainable loss is found in the difference between the value of the car as represented and the *91 value of the car as purchased. Plaintiff alleged that defendant *988 represented that the car was in "good running order," that it would not need "any major fixes any time soon," that plaintiff was "buying a good car," and that he was getting the car "at a great price." The representation of "a really good deal" may fairly be construed to be an advantageous bargain in which the buyer is getting a car at a better value than its actual price.
The precise measure of that better value did need not to be proven. As observed in Scott , "there is no need to allege or prove the amount of the 'ascertainable loss.' " 267 Or. at 515, 517 P.2d 661 (emphasis added). In that case, it sufficed to infer that the difference between the promised tent and purchased tent was a loss in value. Id. at 515-16, 517 P.2d 661. Similarly, in Weigel , it sufficed to infer that the difference between a new car and a "pre-owned" car was a loss in value, even without evidence of the particular sum. 298 Or. at 137, 690 P.2d 488. Likewise, in Feitler , although there was no evidence that the 47 drawings were worth less than the $30,000 paid, an ascertainable loss could be inferred from the loss of the quality of the exclusivity of that collection. 170 Or.App. at 705, 712-13, 13 P.3d 1044.
The jury's verdict that found no damages is not to the contrary. Generally, we understand a jury to follow its instructions. Purdy v. Deere and Company , 355 Or. 204, 227, 324 P.3d 455 (2014). In this case, the jury was instructed that economic damages are the objectively verifiable monetary losses, considering the "reduction in the fair market value of the vehicle" and plaintiff's out-of-pocket expenses. In particular, the jury was instructed, "The measure of damages is the difference between the price paid for the vehicle and the fair market value of the vehicle at the time of the sale." The jury was not asked to determine the value of the car as represented. The verdict only determined that the price paid-a below-market price-was the same as the value of the car received with its material defects-a difference of zero.
The jury also determined that plaintiff received a car that had one or more of the alleged material defects, that defendant knew or should have known of those material defects, and that defendant willfully failed to disclose *92 those material defects to plaintiff. Those findings mean that the actual car sold was different than the car represented to be a "great price" or a "really good deal." It was not a car "in good running order" that "would not need * * * any major fixes any time soon." The verdict concluded frankly that, in terms of market value , plaintiff got that for which he paid. However, the verdict also confirmed that plaintiff received a car with undisclosed material defects-a car that was not the better bargain that defendant had represented.
The task of deciding plaintiff's primary request for rescission was left to the trial court.[3] The trial court found "that since the car was not as promised, rescission is an available remedy." That finding is consistent with existing law, including Pearson which recognized the potential for relief in the form of a refund of a purchase price based on reliance on misrepresented qualities. Because we will understand a trial court to make implicit findings consistent with its conclusion, we read the trial court's conclusion to imply a finding of difference between the advantageous bargain promised-something better than the market price-and the troubled car actually delivered, thereby serving to justify rescission under ORS 646.638(1), which provides that the court may provide any equitable relief it considers necessary or proper. See Ball v. Gladden , 250 Or. 485, 443 P.2d 621 (1968) (regarding implicit findings).
*989 We conclude that the trial court did not err in granting rescission for a return of the car and an adjusted portion of the purchase price.
Our conclusion also resolves defendant's second assignment of error on attorney fees under ORS 646.638(3).
*93 Despite no award of damages, plaintiff did prevail.[4] Thus, the trial court did not err in awarding plaintiff recovery of attorney fees.
Absent error, the general and supplemental judgments are affirmed.
Affirmed.

Defendant did not designate the trial transcript as part of the record for appeal. Because, however, the designated parts of the record sufficiently support the court's rulings, we do not further address the consequences of defendant's failure to designate the transcript.

Plaintiff also alleged that, a month after the purchase, he had caused damage to the car's oil pan.

Plaintiff suggests that the trial court may be regarded as an independent factfinder-presumably not bound by the verdict. It is not clear from the record whether the court or parties agreed to try the case in that fashion, agreed that the court should be bound by those issues determined by the verdict, or made no agreement at all. Previously, we have observed that the law is unsettled as to whether and when a court sitting in equity is required to give weight to a jury's findings on a legal claim in the same case. See Vukanovich v. Kine , 271 Or.App. 133, 137 n.5, 349 P.3d 567 (2015). We do not here decide whether the court was bound by the verdict or could make independent factual determinations. We need not decide that question because we read the court's opinion to express its consideration or acceptance of the verdict, and we conclude that the verdict can be read consistently with the court's conclusion.

Defendant raised additional arguments on this assignment of error, which we reject without published discussion.